Argued July 15, affirmed September 21, 1920.

## TEISER *v.* BARLOW.*

### (192 Pac. 394.)

**Attorney and Client—Complaint for Services Held to State a Cause of Action.**

1. A complaint alleging a written contract that plaintiffs, as attorneys for defendants as heirs, should, in any event, receive $1,000 for their services and 10 per cent of the amount of the estate which 'defendant should recover, not under any circumstances to exceed a fee of $3,000, a faithful performance of their duty under the contract, and an unjustifiable breach by defendants preventing further services, stated a good cause of action to recover the $1,000 in any event.

**Attorney and Client—Attempt to Introduce New Terms into Contract as to Fees or to Discontinue Services Warranted a Discharge.**

2. If attorneys attempt to introduce new terms into their written contract governing their employment and compensation or to discontinue their services, the clients would be justified in taking them at their word and in discharging them, though, if they merely present a tentative settlement and notified their clients as to the 'basis on which their claim would be made at the conclusion of their services, without making its acceptance a condition to their continued services, it would not justify a discharge, if in fact they were still ready and willing to go on with the litigation.

**Attorney and Client—Whether Attorneys Attempted to Introduce New Terms into Their Contract of Employment Held a Question for the Jury.**

3. In an action to recover attorneys' fees based on a written contract, conflicting evidence as to whether the attorneys attempted

---

*Authorities passing on the question of right to discharge attorney employed for contingent fee are collated in a note in 38 L. R. A. (N. S.) 389.

                                                        REPORTER.

to introduce new terms into their contract, and threatened to discontinue their services if such terms were not accepted, or whether they merely notified the clients of a tentative basis of settlement at the conclusion of their services, not made a condition to the continuance of their services, *held* a question for the jury.

**Attorney and Client—Suggestion by Attorney of Basis of Settlement Under Contract of Employment Held not Ground for Discharge.**

4. In an action for attorneys' fees based on a contract providing for the payment of $1,000 in any event and 10 per cent of the amount of the estate which the clients should recover, which fee should in no event exceed $3,000, letters by the attorneys, merely urging a present agreement as to what their final fee should be, and as to what they expected to claim at the end of the litigation, without a demand for the payment of any fees before the litigation was terminated, did not justify their discharge.

From Yamhill: HARRY H. BELT, Judge.

Department 1.

This was an action to recover attorneys' fees.

The complaint alleged that in January, 1918, the defendants employed plaintiffs to represent them, as heirs at law of Thomas A. Barlow, deceased, in matters arising in the administration of the estate of said decedent, and more particularly in a dispute then existing between defendants and their former attorney. A copy of the agreement between plaintiffs and defendants is attached to the complaint and is as follows:

"This agreement, entered into this 16th day of January, 1918, between Wm. J. Barlow, Mary J. Curry, Mary Hammond, Carrie Skoyles, parties of the first part, and Teiser & Smith, parties of the second part, witnesseth:

"That the said parties of the second part, in consideration of the agreement to pay by the parties of the first part the sum of 10 per cent *of the amount of the estate which the said parties of the first part shall recover, obtain or receive* out of or under the estate of Thomas A. Barlow, deceased, which sum, however, shall not be under any circumstances less

than one thousand ($1,000) dollars, nor more than three thousand ($3,000) dollars, agree to assume the obligations and duties as attorneys for the said parties of the first part, as heirs at law of Thomas A. Barlow, to the end that said parties of the first part may recover and receive any and all property and moneys to which they may be entitled as heirs of said estate.

"The said parties of the first part agree to pay, in consideration for the services heretofore mentioned, ten per cent (10%) of the amount of said estate received by them as heirs of said estate, but in no event shall said amount be less than one thousand ($1,000) dollars or more than three thousand ($3,000) dollars, irrespective of the amount or value of the said estate recovered by them.

"The parties of the second part further agree that the fees to be paid by the parties of the first part to them, plus the fee, or fees, which shall ultimately be paid to William A. Carter, present attorney of said parties of the first part in this matter, shall not exceed the amount which the said parties of the first part agreed to pay the said William A. Carter under a contract or agreement, dated the 3rd day of November, 1911, whereby said parties of the first part agreed to pay to said William A. Carter thirty per cent (30%) of the amount recovered or received by them out of said estate, exceeding in no event seven thousand five hundred ($7,500) dollars.

"Duly signed, witnessed," etc.

The complaint then set up in detail the services rendered by plaintiffs, and alleged that all the litigation so detailed had been concluded by plaintiffs properly and satisfactorily, and alleged the readiness of plaintiffs to continue to perform such other services as were necessary to complete the representation of said estate, and alleged that defendants had, without cause, arbitrarily discharged them; that the amount received by and paid to defendants' former

attorney was $2,200; that the amount of the estate which defendants will recover exceeds thirty thousand ($30,000) dollars, and that there is due defendants by reason of said services the sum of three thousand ($3,000) dollars, for which sum, with 6 per cent interest, plaintiffs demand judgment.

Defendants answered the complaint, denying that plaintiffs rendered the services claimed in the complaint, or that the services required were rendered properly or satisfactorily; denied the readiness of plaintiffs to continue in or complete the services necessary to close up the estate; denied that they had arbitrarily or without cause dismissed plaintiffs from their employ; denied the value of the estate, and, having by appropriate denials placed in issue all the facts which plaintiffs relied upon for a recovery, set up affirmatively a defense as follows:

"That plaintiffs entered upon the services mentioned in said contract, but on or about November 1st, 1918, contrary to the terms thereof, demanded that defendants fix the fee to be paid plaintiffs for their legal services to be performed under said contract, first at the sum of three ($3,000) thousand dollars in money, and thereafter at the sum of twenty-one hundred ($2,100) dollars in money, and demanded that defendants give plaintiffs some kind of security for said fee, which demands these defendants refused.

"That at said time defendants had neither recovered, obtained or received anything from said estate, nor have they to this day, nor are there assets claimed by said estate, of which these defendants may become possessed, to exceed in value the sum of eleven thousand ($11,000) dollars, and said demand was a breach of the terms of the contract. That at said time, and now, there were and are legal controversies pending concerning the property and moneys to which defendants might be entitled as heirs of the

said estate of Thomas A. Barlow, which matters were covered by said contract of service, and required immediate legal attention, but nevertheless, plaintiffs notified defendants that they refused to give said matters their attention unless defendants complied with their demands as aforesaid, and on account of said refusal and said breach of said contract, and on account of defendants having lost confidence in said plaintiffs, these defendants were compelled and did secure other attorneys to represent them in said matters. That plaintiffs, without cause, have breached said contract as aforesaid, and there is nothing due them thereunder.''

This defense having been put in issue by appropriate denials, the cause came on for trial before a jury, which found a verdict in favor of plaintiffs for $1,000, and from a judgment on such verdict defendants appeal.                    AFFIRMED.

For appellants there was a brief with oral arguments by *Mr. W. A. Carter* and *Mr. Jerry E. Bronaugh.*

For respondents there was a brief over the name of *Messrs. Dey, Hampson & Nelson,* with an oral argument by *Mr. R. C. Nelson.*

McBRIDE, C. J.—1. The defendants' first contention is that the complaint does not state facts sufficient to constitute a cause of action. The contract provides in effect that plaintiffs should, in any event, receive $1,000 for their services, and this was a fixed and irreducible minimum, which was to be paid without reference to how the litigation, in regard to the estate, might terminate even though the defendants should receive nothing. The only fact which would defeat a recovery by plaintiffs of this sum would be

a breach of the contract on their part; therefore, on their theory that they had been faithfully engaged in the performance of their duty under the contract, and had been prevented from proceeding to fulfill it completely by an unjustifiable breach by defendants, they were entitled to recover this $1,000 in any event. As to that sum their right to recover became fixed when they were discharged, if the discharge was without legal justification.

It is unnecessary to consider whether or not the complaint stated a cause of action as to the remaining sum claimed to be due, as plaintiffs recovered judgment only for $1,000. The complaint states most, if not all, the facts necessary to constitute a cause of action in tort for breach of the contract, but the prayer is for the sum due, with interest, and the reasonable value of the services is not set forth. There is a good cause of action stated on the contract as to the $1,000. As to the balance of the claim the writer inclines to the opinion that the complaint is insufficient to justify a recovery, but in view of the verdict this question becomes immaterial.

2. The principal objection urged by defendants relates to the legal effect of certain correspondence introduced in evidence. It appeared from the testimony that when practically the most of the business relating to the estate had been transacted, except a suit by a Mrs. Roseland, which involved a claim to the entire property, the plaintiffs suggested to defendant, Wm. J. Barlow, who was attorney in fact for all the defendants, that it would be well, now that their services were drawing to a close, to determine the amount of compensation they should receive under their contract. The plaintiffs—according to Mr. Teiser's testimony—suggested that, if the com-

pensation could be agreed upon at that time, the plaintiffs would accept $2,100, but that, if the matter was not then arranged, the plaintiffs would, at the conclusion of their services, demand $3,000, said sum being computed upon a valuation of $30,000 of the whole estate.

After some discussion, Mr. Barlow refused this offer, and offered to give his note for $1,500, which Mr. Teiser declined to accept. So far, both parties are substantially in agreement as to the substance of what occurred; but Barlow testified in substance that Teiser told him that, if he did not settle for $2,100 he would not render any further services, the gist of his testimony being: "He [referring to Mr. Teiser] stated, if I wanted him, or their services, for to contest this Roseland case, I had to agree to pay $2,100 to-day, sign an agreement, or $3,000 at the end of the term."

"Q. He didn't say so in that letter did he?
"A. No, sir; verbally though."

So there was a conflict in the oral testimony to this effect; plaintiffs claimed that they merely asked for an agreement as to what their fees should be at the termination of their services, offering, if these should be agreed upon at the time of the conversation, that they would take $2,100, but notifying defendant Barlow that, if the matter was not then agreed upon they would expect, at the termination of their contract, to receive 10 per cent upon $30,000, in case the Roseland claim was defeated. Defendants' claim was that Teiser demanded that the defendants should make an absolute agreement to pay $2,100 for the services, and threatened that they would retire from the case then pending in the event the defendants refused to comply.

It needs no citation of authorities to justify the position that if plaintiffs attempted to introduce new terms into their contract, and threatened to discontinue their services if such terms were not complied with, defendants would be justified in taking them at their word and discharging them; but if, on the other hand, plaintiffs merely proposed a tentative settlement, and notified defendants of the basis upon which their claim would be made at the conclusion of their services, without making an acceptance of it, a condition of their continuance in defendants' service, such proposal would not justify defendants in discharging them, if in fact they were still ready and willing to go on with defendants' litigation.

3, 4. The discordant testimony on the subject presented a matter of fact to be considered by the jury; not a matter of law for the court. But it is urged that the letters written by plaintiffs to Mr. Barlow show that plaintiffs were attempting to introduce new terms into the contract, and to bind the defendants to them, and that the court should have construed these letters as a repudiation of the contract, and granted defendants' motion for a nonsuit.

The letters are lengthy, but for the sake of clearness we give them entirely, omitting formal parts:

"Dear Sir:

"Suit has been again instituted by Mrs. Roseland, and is now pending, as you are aware. Should this suit be successful on her part, as we cannot believe it will be, the possibilities are that it will result in a total loss of the estate to you and the heirs, although you will be this much the gainers, that you have acquired for $22,000 property worth considerably more than that sum.

"As the matter stood on day before yesterday, a deed had been drawn by the administrator to you,

97 Or.—27

representing the heirs, and you are to execute notes in the amount of $11,050, secured by first mortgage on the property, as per terms of sale.

"The second Roseland suit has not been answered, but the litigation has reached such a stage that we can now determine, with almost certainty, as to what will remain in the estate and come to the heirs, should the Roseland suit fail, and we deemed it advisable at this time to have an understanding with you as to what our fee, based upon our contract, would be in case of the successful termination in our favor of the Roseland case.

"It appears from the contract that for representing the heirs we were not to receive over $3,000 in any event, nor less than $1,000, but in no event were we, together with Mr. Carter, to receive a sum in excess of $7,500; in other words, if Carter had recovered $7,500, or over, our representation of the heirs was to be without compensation, and if he were to receive $7,000, we would receive of course, only $500, and so on. The sum between $1,000 and $3,000 which we were to receive was based upon 10 per cent of the value of the estate coming to the heirs. The valuation of the estate placed by you at the time of the sale of the real property was from $45,000 to $50,000. The appraisement of the property was $30,000, and the allowance of the administrator's commission was based on that valuation.

"The $11,050 deposited by you as part payment of the purchase price of the land on behalf of the heirs, with the exception of the $2,200 paid to Carter, will all be used, according to our figures, in the payment of the costs of administration and the debts of the estate and in the payment of the first mortgage thereon, so that at the lowest figures the value of the property coming into the hands of the heirs will be of a value of at least $30,000, less $8,850, or $21,150. Therefore, the lowest amount to which we would be entitled, under our contract, is $2,115, but you will understand that the $30,000 is an arbitrary amount as to the value of the estate, and the value of the es-

tate as placed upon it by you is considerably more, namely, $45,000 to $50,000.

"Now, again, the additional work performed by us and to be performed, namely, the defense of the Roseland case, was not contemplated by us at the time the contract of employment was entered into between us. That is a matter which requires and has required considerable work and care, and in view of the results obtained in these matters handled by us, and the obtaining of property valued at more than $30,000 by you for the heirs, we feel that we have earned and are entitled to $3,000 for our services at the least.

"We think that we would be justified, in view of the fact that the Roseland controversy was not in contemplation, in charging an additional sum in addition to the $3,000, but, as stated to you, we have waived this right, or at least include it in fixing our compensation at $3,000.

"In our conference on yesterday and the day before, you felt that this sum was unduly high, and we stated to you that we have thus far not gotten into serious controversy with a client in regard to a fee, and did not care to do so, and in the spirit of a compromise we stated that, if the matter be determined now, so that there would be no controversy in the future, after our services are all performed, we would place our fee at $2,100, or the lowest amount which we felt it could be figured at, and with which you agreed was the lowest which it could be figured at. You, however, felt that we should take less than we had agreed upon, in view of the fact that the estate did not turn out to be as much as you had anticipated it would. The writer told you then, and he again repeats to you, that we cannot see the force of your argument, and that we were asking less than we contracted to take when we agreed to take $2,100.

"This proposition of $2,100 was made to you, as you will understand, and as we thoroughly explained to you then, and again explain to you now, providing that sum be agreed upon then as the sum we should receive in view of a successful termination of the

Roseland matter, and we further told you then, and we again repeat it, that unless you were willing to come to such agreement and understanding, our fee when the litigation was over would be $3,000. In other words, $2,100, which we were willing to agree upon, would have to be agreed upon then. You offered at that time to execute your note for $1,500 in our favor, but as you know we refused this sum, and told you positively that no sum under $2,100 would be considered by us, under the circumstances. You stated that you preferred to let the matter remain until the matters were finally closed up some time in the future, and we then told you that our fee therefore would be $3,000; that we would continue the litigation for you and on your behalf with all earnestness, and give you the best that we had in us to that end, but wanted you fully to understand that when the Roseland litigation was over and the estate closed, or ready for closing, that our charge to you, representing the heirs, would be $3,000.

"Of course, this $3,000 is based upon the successful termination of the Roseland litigation, and as we told you on yesterday and the day before, we are not asking for payment of any fee at this time, but we thought it fair to you, as well as to ourselves, that the amount of our fee under the contract be settled at this time, and so far as we are concerned it is now settled at $3,000.

"We have written you thus at length, so that there may be no misunderstanding between us whatsoever when the litigation is finally determined. * * ".

"November 4, 1918.

"Wm. J. Barlow.

"Dear Sir:

"So that there may be no misunderstanding about our conversation of Saturday as to our letter of the 1st instant concerning our fee in the above matter, which letter the writer delivered to you in the presence of Mr. McLean, and which was read to you in his presence, we beg to confirm what was then stated upon your suggestion that we permit the matter to

remain as it is until you could communicate with the other heirs.

"You stated that you wanted the other heirs in the matter to understand the situation, so that they could not claim you were taking advantage of them; that that was the reason for your asking us to state our position to Mr. McLean, so that he might, if necessary, state the matter to the other heirs.

"The writer stated to you and to Mr. McLean that our position was outlined in a letter which we had written to you, and which was handed to you and which was read in full to you and Mr. McLean by the writer, and further stated that we stood upon that letter, and that there was no more to be said.

"After attending to the transfer of the property to you, and the giving of the mortgage and notes by you, and seeing that the papers passed were regular, you again asked that we leave the proposition to accept $2,100 in full satisfaction of our services, should the Roseland litigation be determined in our favor, open until you could have time to write to the heirs and receive a reply from them, which would require about 12 days. We stated to you that in all of the matters in which the estate was involved you have had full authority from the heirs to act for them, which authority had been confirmed by various letters to you from time to time, and that we could not see, in view of the fact that we were conceding something, rather than asking for something to which we were not entitled, why this particular matter should remain open, nor could we see why the request was not made when the matter was presented to you when you were in Portland.

"It was further stated to you that we would stand on the position taken in our letter of the 1st instant, and stated further, however, that you might write to the other heirs, and take the matter up with them; that after taking the same up with them, if you came to us with a proposition from them in regard to the matter, we would be glad at any time to consider it, but that we would not agree to modify our position in any way. We now again confirm these state-

ments. Our statement to you, therefore, again is
that our fee in the matter is $3,000, and that, should
the Roseland matter be successful, we shall expect
you to compensate us in that amount.

"As was stated to you then, if you get in touch
with the other heirs without delay, we would be
pleased to confer with you at any time concerning
what they thought was proper, but that any modifi-
cation of our position taken in our letter of the 1st
instant would be a mere gratuity, and would have to
be determined when you took the matter up with us
after hearing from the other heirs, should you care
to do so."

We see nothing in these letters which can be con-
strued as a repudiation of the contract. Plaintiffs
were merely suggesting a present agreement as to
what their final fee should be, and coupling that sug-
gestion as to what they expected to claim the con-
tract would entitle them to at the end of the litiga-
tion. There was no demand for the payment of any
fees before the litigation had finally terminated.

It was apparent that there might in the end be a
disagreement as to the value of the property, and,
consequently, a disagreement as to the basis upon
which the 10 per cent due plaintiffs should be taxed.
In view of this plaintiff said, in effect, to defend-
ants, that they (plaintiffs) were willing to call the
amount $2,100, if defendants would agree to that
sum before the litigation ended, but, if that sum was
not agreed upon they expected, in case the pending
litigation terminated favorably, to claim that the
property which the heirs would receive was worth at
least $30,000, and that upon that basis their fee
would be $3,000. There is no suggestion anywhere
of adding any new term to the contract, or of with-
drawing from the litigation; on the contrary, there
were frequent offers to continue in the service of the

defendants to the end, and the action of defendants, if the jury believed the testimony offered by plaintiffs, was a clear breach of the contract.

Finding no substantial error in the record the judgment will be affirmed.      .      AFFIRMED.

BEAN, BENSON, and JOHNS, JJ., concur.

---

Motion to strike bill of exceptions submitted July 27, allowed September 21, 1920.